Gerald Grunsfeld, Esq.
Lazar, Grunsfeld Elnadav, LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
Telephone: (718) 947-7476
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPTEKA, INC.<br><br>Plaintiff,<br><br>-against-<br><br>NATIONAL PRODUCTS INC.,<br><br>Defendant, | **COMPLAINT** |

Plaintiff, OPTEKA, INC. ("OPTEKA"), by its attorneys, as and for its Complaint against Defendant,  allege as follows:

## NATURE OF THE ACTION

1.      OPTEKA is the owner of the federally registered X-GRIP® trademark, Registration Number 4,323,554 ("the MARK").

2.      The Mark protects photographic and video camera accessories, such as mounts for photographic and video equipment.

3.      Defendant is using counterfeiting and infringing reproductions of the MARK on the same types of products on which Plaintiff uses its mark and is competing with Plaintiff in the same channels of trade. Plaintiff seeks damages for Defendant's counterfeiting and  infringement under the Lanham Act, and for Defendant's acts of unfair competition. Plaintiff also seeks an Order directing the cancellation of Defendant's X-grip trademark, and enjoining Defendant from

any further use of the term "X-GRIP" in connection with the sale of any type of grip or mount intended for consumer electronic devices.

## THE PARTIES

4.     Plaintiff OPTEKA, is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 1635 McDonald Avenue, Brooklyn, NY 11230.

5.     Defendant NATIONAL PRODUCTS INC., ("NPI") is a Washington-based corporation.

6.     NPI sells a mount/grip/holder for cell phones, tablets, and other similar consumer electronic devices under the "x-grip" brand and/or model name "infringing x-grip products".

7.     NPI sells these infringing x-grip products to consumers located in New York via its website (www.rammount.com).

8.     NPI sells its infringing x-grip products, either directly or via a distributor, to BH Photo and Video. B&H Photo is purported to be the largest consumer electronics store in the country.

9.     NPI also sells its infringing x-grip products, either directly or via a distributor, to Union Garage and Walmart stores located in New York.

10.     Upon information and belief, for at least the last three years, NPI has sold hundreds of thousands of the infringing x-grip products to several large distributors with the intent and the knowledge that the distributors will sell the products to customers nationwide including to  thousands of customers located in New York.

11.      Upon information and belief, for at least the last three years,  NPI has sold many thousands of the infringing x-grip products, both directly, and indirectly,  to customers located in New York.

12.     Upon information and belief, NPI transacts business in New York and in this judicial district and/or solicits business from and markets and advertises its merchandise to residents in this judicial district.

13.     Upon information and belief, NPI actively solicits and derives revenues from customers located in the State of New York and in this District, via its website and via its sales to distributors and stores located in New York.

14.     Said infringing and counterfeiting activity by Defendant has allowed it to accrue an unknown amount of unlawful profits while simultaneously depriving Plaintiff of same.

## JURISDICTION AND VENUE

15.     The action arises under the Lanham Trademark Act, 15 U.S.C. §1051 et seq. ("the Lanham Act"), and the common law of the State of New York. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

16.     This Court has jurisdiction over Defendant because of the revenues it has solicited and obtained from New York customers, and because of the counterfeit/infringing products it has shipped to New York.

17.     Venue is proper in this District pursuant to 28 U.S.C. §1391.

## FACTS COMMON TO ALL CLAIMS

18.     OPTEKA is a small family-owned business, located in Brooklyn, New York, consisting of four employees.

19.     On August 9, 2012, OPTEKA applied for a trademark from the USPTO, in international class 009, for the term "x-grip", protecting photographic and video camera accessories, such as mounts for photographic and video equipment.

20.     The USPTO granted the trademark registration on April 23, 2013 (Registration Number 4,323,554).

21.     As noted on the application,  since at least 2009, OPTEKA has sold its mount/grip for cameras and other consumer electronics,  under the brand name "X-grip".

22.     In particular, by October 2009, at the latest, OPTEKA had began selling its X-Grip products nationally on Amazon.com, and via numerous other channels of trade.

23.     Upon information and belief, prior to OPETKA's use of the term X-Grip as a brand name for a video-mount, no other video-mount, used the term x-grip.

24.     Although OPTEKA originally focused its marketing of the X-grip towards traditional camera and video equipment, by 2012, a large percentage of consumers were purchasing OPTEKA's X-grip for use with the cameras and videos on cellphone.

25.     Thus, by 2012, consumers begun posting videos on You-Tube.com of the X-grip being used with cell-phone cameras.

26.     OPTEKA has sold  approximately 150,000 X-GRIPS since introducing the product to the market in 2009.

27.     These sales are made via Amazon.com, Ebay.com and numerous other websites.

28.     Since 2009, OPTEKA has spent $175,000 marketing the X-Grip.

29.     OPTEKA aggressively polices its X-grip mark and sends out cease and desist letters whenever it learns of a company using the x-grip mark on counterfeit products.

30.     In 2012, OPTEKA filed a trademark infringement lawsuit against a company that was selling counterfeit X-grips.

31.     In 2014, OPTEKA filed a trademark infringement lawsuit in France, against a company that was selling counterfeit X-grips in France.

32.     Although OPTEKA  polices its mark aggressively, its ability to learn of counterfeit products is tempered by its extremely small size, and hence limited manpower.

33.     As such, OPTEKA never learned that on March 15, 2013, Defendant filed an application for a trademark registration for the identical term (x-grip) in the identical class (009), protecting virtually the identical products.

34.    Defendant's application was granted on October 25, 2013. Registration number 4,418,619.

35.    According to Defendant's trademark application, it first started using the term x-grip on February 5, 2011, i.e., at least 16 months after Plaintiff had already starting selling its X-grips.

36.    Thus, as a matter of law, Plaintiff is unquestionably the senior user of the Mark with the priority interest in the Mark.

37.    Although, on Defendant's application it limited the application to "mounting devices for monitors", the Defendant also markets its counterfeit x-grips as a mount to be used for cellphones that are recording video footage.  For example, Defendant uploaded a video showing video footage captured by a cellphone mounted to its counterfeit X-grip. (https://www.youtube.com/watch?v=hnKvqcME0Ok).

38.    A Google search for the term "x-grip video mount", returns pictures and websites for both Plaintiff's X-grip and Defendant's infringing x-grip.

39.    Defendant's use of the identical term, in the identical class, on products, performing identical functions, being sold in/on identical websites has created significant customer confusion.

40.    In fact, the confusion Defendant has sown is so great that it even confused itself. On or around February 23, 2018, Defendant contacted Amazon.com and instructed Amazon.com remove Plaintiff's X-grip listings, notwithstanding that Plaintiff is the senior user with priority interests in the X-grip mark.

41.    Upon information and belief, Defendant has diverted tens of thousands of x-grip sales that would have and should have gone to Plaintiff.

42.    Because an employee at OPTEKA  made an error in how he was checking Amazon.com for infringing x-grip products, Plaintiff never discovered the existence of Defendant's infringing product until Defendant instructed Amazon.com to remove Plaintiff's x-grip listing.

43.     Defendant's actions has caused and will continue to cause Plaintiff significant financial losses while simultaneously unjustly enriching itself by the false association created by its use of the Mark.

## FIRST CLAIM FOR RELIEF

*(Trademark Infringement Under 15 U.S.C. §§1114)*

44.     Plaintiff OPTEKA, repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

45.     By Defendant's unauthorized use of a mark that is identical to Plaintiff's Mark, Defendant is trading on the Mark's goodwill and reputation.

46.     Defendant's unauthorized use of the Mark constitutes counterfeiting and infringement of federally registered trademarks and confuses and deceives customers into erroneously believing that Defendant and its merchandise is associated with and/or authorized by OPTEKA.

47.     Plaintiff has never authorized or otherwise consented to Defendant's use of the Mark in any manner.

48.     The acts and conduct of Defendant complained of herein constitute willful and deliberate counterfeiting and infringement of the Mark, in violation of Section 32 of the Lanham Act, 15 U.S.C. §§1114.

49.     By reason of all the foregoing, Plaintiff has been damaged by Defendant's willful, unauthorized use of the Mark in the manner set forth above in an amount to be proven at trial.

50.     Plaintiff OPTEKA, seek damages, attorneys' fees and costs of this action pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

*(Trademark Counterfeiting Under Sections 32, 34, and 35, of the Lanham Act, 15 U.S.C.*
*§§1114(l)(b), 1116(d), & 1117 (b)-(c))*

51.     Plaintiff OPTEKA, repeats and re-allege the allegations in the prior Paragraphs as if fully set forth herein.

52.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's sole rights in the Mark, Defendant has distributed, advertised, offered, for sale and/or sold counterfeit products to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

53.     Defendant's counterfeit products reproduce, counterfeit, copy, and colorably imitate the Mark, or display spurious designations that are identical with, or substantially indistinguishable from the Mark. Defendant has applied its reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendant's counterfeit products, which are likely to cause confusion, or to cause mistake, or to deceive.

54.      Defendant's unauthorized use of Plaintiff's Mark was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and that this would deceived consumers into believing they were purchasing authorized merchandise bearing the true and legitimate Trademarks. Defendant's actions constitute willful counterfeiting of Plaintiff's Mark in violation of 15 U.S.C. §§1114(l)(b), 1116(d), & 1117 (b)-(c)).

55.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damage to the Mark, and other damages in an amount to be proved at trial.

56.      Plaintiff therefore seeks damages, plus attorneys' fees, plus punitive damages.

## THIRD CLAIM FOR RELIEF

*(Cancellation of Trademark Registration No. 4,418,619 pursuant to 15 U.S.C. §§1064*
*and 1119)*

57.     Plaintiff repeats and re-alleges the allegations in the prior Paragraphs  of the Complaint as if fully set forth herein.

58.     Plaintiff has standing to bring this action because it will be damaged by the continued registration of Defendant's trademark.

59.     This action is being brought within five years of the registration of Defendant's Mark.

60.     The grounds for the cancellation are that the trademark should never been issued to Defendant in the first place.

61.     At the time Defendant applied for its Mark on March 15, 2013, Plaintiff had already been using the identical Mark, for the same class of goods, on goods performing the identical function, and being sold on identical channels of sale, for more than three half a years.

62.     At the time Defendant applied for its Mark on March 15, 2013, Plaintiff had already applied more than seven months earlier for the identical Mark, for the same class of goods, on goods performing the identical function, and being sold on/in identical channels of sale, for more than three half a years.

63.     Plaintiff has used the Mark on a daily basis since October 2009 and has never abandoned the Mark.

64.     On the contrary, Plaintiff has expended significant resources marketing the X-Grip Mark and has achieved significant sales during this period of time.

65.     Plaintiff never gave Defendant any type of permission or waiver to use the Mark.

66.     The continued registration of Defendant's Mark will cause continued consumer confusion.

67.     The continued registration of Defendant's Mark will cause blurring, dilution, and tarnishing of Plaintiff's senior Mark.

68.    As such, the Court is respectfully requested to issue an Order to the Director of the USPTO, directing him/her to cancel the registration of Defendant's Mark with immediate effect.

## FOURTH CLAIM FOR RELIEF

*(Unfair Competition and False Designation of Origin Under 15 U.S.C. §1125(a))*

69.    Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

70.    Plaintiff owns all right, title and interest in and to the Mark and holds the exclusive rights to market and sell clothing bearing the Mark.

71.    Defendant's conduct as alleged herein, including its use of the Mark on their infringing product constitutes a false designation of origin as such conduct is likely to cause confusion or to deceive consumers as to the origin, sponsorship, affiliation, connection and/or association of the Mark.

72.    Defendant's conduct is calculated and intended to deceive and is likely to deceive consumers into believing that Defendant's products are Plaintiff's products. Defendant's products bears a indistinguishable replica of the Mark, and does not originate from or have the approval or authorization of Plaintiff.

73.    Defendant is capitalizing on and profiting from the consumer confusion between its infringing products  and Plaintiff's authentic x-grip merchandise.

74.    The foregoing acts of Defendant constitute unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

75.    Plaintiff has sustained and is entitled to monetary damages in an amount to be proved at trial.

76.    Upon information and belief, Defendant has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable and said gains, profits and advantages rightfully belong to Plaintiff.

77.     As such, Plaintiff is entitled to statutory and non-statutory damages to be decided at trial.

## FIFTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

78.     Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

79.     Plaintiff has expended substantial time, resources and effort to develop and obtain an excellent reputation and goodwill for its Mark.

80.     Defendant has knowingly and willfully appropriated the Mark in an effort to create the false impression that their Infringing products are sanctioned by Plaintiff and in order to arrogate unto itself all of the goodwill associated with Plaintiff and its Mark. Defendant's unlawful acts in appropriating rights in OPTEKA's registered trademark were intended to capitalize on the goodwill that accrued to the Mark, for Defendant's own pecuniary gain, at Plaintiff' expense.

81.     Defendant's infringing products are calculated to create consumer confusion and to deceive and mislead consumers into believing that such merchandise originated with or is authorized by Plaintiff, and has caused confusion as to the source of Defendant's infringing products, all to the detriment of Plaintiff.

82.     Defendant committed the acts alleged herein intentionally, deliberately, fraudulently, maliciously, willfully, wantonly and oppressively with the intent confuse the public and to injure Plaintiff.

83.     Plaintiff has suffered monetary damages in an amount to be determined at trial.

84.     Upon information and belief, Defendant has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable and said gains, profits and advantages rightfully belong to Plaintiff.

## SIXTH CLAIM FOR RELIEF
### (Unlawful Deceptive Acts and Practices- N.Y. Gen. Bus. Law §349)

85. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

86. Defendant, without Plaintiff' authorization or consent, and having knowledge of Plaintiff' prior rights in and to the Mark, manufactured, advertised, distributed, offered for sale and sold the infringing products to the consuming public in direct competition with Plaintiff.

87. Defendant's use of the Mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Defendant's infringing products, and is likely to deceive the public into believing the infringing products being sold by Defendant originates from, is associated with, or is otherwise authorized by Plaintiff.

88. Defendant's deceptive acts and practices involve public sales activities of a recurring nature.

89. Plaintiff is entitled to damages in an amount to be determined at trial and attorneys' fees and costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand judgment against Defendant as follows:

1. Ordering that any websites and/or companies Defendant controls be permanently restrained and enjoined from:

a. Further infringing the Mark, and from importing , manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any clothing bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Mark or any design confusingly similar thereto;

b. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Mark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any consumer electronic products, including grips and mounts;

2.   Directing that Defendant deliver for destruction all Infringing Products, goods, products, signs, labels, brochures, advertising, promotional material prints, packages, dyes, wrappers, receptacles and advertisements in its possession or under its control bearing any of the Mark, or any simulation, reproduction, counterfeit, copy of colorable imitation thereof, and all plates, molds, screens, heat transfers and means of making the same.

3.   Damages in an amount still to be determined at trial.

4.   An Order to the Director of the USPTO, directing him/her to cancel the registration of Defendant's Mark with immediate effect.

5.   Awarding Plaintiff its costs in this action together with reasonable attorneys' fees and expenses as provided for by 15 U.S.C. §1117.

6.   Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
March 5, 2018

Lazar, Grunsfeld Elnadav, LLP


By: _____/GG/_____
Gerald Grunsfeld
Attorneys for Plaintiff
1795 Coney Island Avenue
Brooklyn, NY 11230
(718) 947-7476
Gerry@LGELaw.com